## NATIONAL LUMBER & CREOSOTING CO. v. MARIS.

(Court of Civil Appeals of Texas. San Antonio. Oct. 23, 1912. Rehearing Denied Nov. 27, 1912.)

1. TRESPASS TO TRY TITLE (§ 32*)—NATURE OF PLAINTIFF'S TITLE—PLEADING.

While plaintiff in trespass to try title is not required to plead his title, yet if he does so he will be confined to proof of that title, and, if his allegations of title are not sufficient to show a good one, a general demurrer should be sustained.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 39–41; Dec. Dig. § 32.*]

2. PLEADING (§ 34*)—GENERAL DEMURRER.

On general demurrer, every reasonable intendment must be indulged in favor of the pleading assailed by it, and, if any cause of action or ground of defense is shown by the pleading, the demurrer should be overruled.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 66–75; Dec. Dig. § 34.*]

3. TRUSTS (§ 102*)—RESULTING TRUST—PURCHASE OF PROPERTY.

Where a corporation of which S. and M. were stockholders had a lease and option on certain land in controversy and, to prevent a forfeiture by reason of certain financial difficulties of the corporation, S. and M. purchased the land in their own names, they would be regarded as constructive trustees of the title for its benefit.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 153; Dec. Dig. § 102.*]

Error from District Court, Cameron County; John C. Scott, Judge.

Trespass to try title by C. H. Maris, trustee in bankruptcy of the Brownsville Lumber & Manufacturing Company, against the National Lumber & Creosoting Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Allen & Rich, of Brownsville, for plaintiff in error. F. W. Seabury, of Brownsville, for defendant in error.

FLY, J. Defendant in error, as trustee in bankruptcy for the Brownsville Lumber & Manufacturing Company, instituted an action of trespass to try title to an undivided one-half interest in 10 lots in West Brownsville, Cameron county, Tex., and for partition, against the plaintiff in error herein. Defendant in error specially pleaded his title, in which it was alleged that plaintiff in error claimed the land through a deed from C. H. Mason, Jr., who held the same in trust for defendant in error. The cause was tried by jury and resulted in a verdict in favor of defendant in error, the plaintiff in the court below. No statement of facts has been filed in this court.

[1] In trespass to try title the plaintiff is not required to plead his title, but, if he does plead it, he is confined to proof of that title; and, if his allegations of title are not sufficient to show a good one, a general demurrer should be sustained. Hughes v. Lane, 6

Tex. 289; Pilcher v. Kirk, 55 Tex. 208; Snyder v. Nunn, 66 Tex. 255, 18 S. W. 340; McDonald v. Bank, 74 Tex. 539, 12 S. W. 235; Mayers v. Paxton, 78 Tex. 196, 14 S. W. 568. It has never been held otherwise in this state, and, appellee having specially pleaded his title, his case must stand or fall upon that plea, and he cannot, in order to resist a general demurrer, fall back upon his general action in trespass to try title. This is said in view of defendant in error's contention that the petition, containing the statutory allegations of trespass to try title, is not subject to general demurrer, even if the title specially pleaded is insufficient to maintain the action. The two cases cited are not actions of trespass to try title, and have no bearing on the proposition stated. The case of Staples v. Llano County, 9 Tex. Civ. App. 205, 28 S. W. 569, was an action for debt; the case of Cheeves v. Anders, 87 Tex. 294, 28 S. W. 274, 47 Am. St. Rep. 107, was a suit on an insurance policy. An exception to the rule is where title by limitation is pleaded in addition to the ordinary action of trespass to try title. Mayers v. Paxton, 78 Tex. 196, 14 S. W. 568.

[2] On general demurrer every reasonable intendment must be indulged in favor of the pleading assailed by it, and, if any cause of action or ground of defense is shown by the pleading, the general demurrer should be overruled.

In this case it was alleged that W. H. Mason, Jr., Albert Snyder, and O. K. Mason incorporated their business under the name of the Snyder-Mason Lumber & Manufacturing Company, and afterwards sold to the Brownsville Lumber & Manufacturing Company all of the business of the first-named corporation for $16,000 and the assumption of its debts; that the last-named corporation was a reincorporation of the Snyder-Mason Lumber & Manufacturing Company, with the same stockholders, and occupied the same relation to the land in controversy as did the original lease and option owners, which was the ownership of a certain lease on said land and option to purchase the same from the Brownsville Land & Improvement Company; that the terms of the lease and option were that the said company leased the land to Snyder and Mason for five years on condition that within 30 days from October 1, 1908, it should begin the construction of a planing mill, not to cost less than $5,000, on the land and should complete the same within five months and continue to operate it thereafter, and to put a lumber yard on the land, and that the lessees should have the right to buy the land for $800 at any time after the planing mill and lumber yard had been installed; that afterwards the time for installing the two plants was extended to November 1, 1909; that Snyder and Mason transferred all their rights to the Snyder-Mason Lumber & Manufacturing Company on August 10, 1909, and the same were acquired from that corporation by the Brownsville Lumber & Manufacturing Company; that Snyder and Mason did place the lumber yard on the land, and the two corporations maintained it, and the construction of the planing mill was begun on September 1, 1909, and was being carried on when on October 12, 1909, an attachment was levied on all the property of the corporation by a United States marshal, the same having been sued out by the appellant in this suit, and on December 4, 1909, bankruptcy proceedings were begun and were pending in the federal court.

It was further alleged: "Your petitioner further represents that upon the levy of the said writ of attachment, namely, on October 12, 1909, the said Albert Snyder and W. H. Mason, Jr., for the purpose of protecting the said Brownsville Lumber & Manufacturing Company from a forfeiture of its said lease and option by the Brownsville Land & Improvement Company, which forfeiture was then and there anticipated by reason of the aforesaid attachment, procured from the Brownsville Land & Improvement Company a conveyance of the said block 3, in West Brownsville, which conveyance they took in their own names, and they then and there paid said Brownsville Land & Improvement Company the sum of $800 as required by the terms of the aforesaid lease and option; the said conveyance being made expressly subject to said lease and option. And that by reason of the premises the said Snyder and Mason thereby obtained and held the title to said block of land in trust for the benefit of the said Brownsville Lumber & Manufacturing Company, subject only to the return to them of their expenditures in the premises. That thereafter the said Albert Snyder acknowledged said trust, and together with W. C. Feild, to whom he had transferred half his title to said land, conveyed to plaintiff herein, as trustee for the Brownsville Lumber & Manufacturing Company, then in bankruptcy, his right in and to said block, being one undivided half thereof, which undivided half was thereafter conveyed to plaintiff under an order of sale issued in said bankruptcy proceeding out of the said district court of the United States to the said National Lumber & Creosoting Company, the defendant in this cause. But that the said W. H. Mason, Jr., wholly failed to transfer to plaintiff the legal title in and to the remaining undivided half of said premises, but subsequently, on June 29, 1910, conveyed same to the defendant herein. And your petitioner represents that he is ready and willing to pay to the defendant herein as assignee of said W. H. Mason, Jr., the aforesaid moneys paid by him to said Brownsville Land & Improvement Company, to wit, the sum of $400, with legal interest thereon, and all legitimate expenses connected with the

obtaining of said conveyance from said Brownsville Land & Improvement Company, and he now here offers so to do, and avers that he is entitled to have from defendant a conveyance of its right and interest in and to said undivided half of said block, held from and under the said W. H. Mason, Jr."

[3] If the bankrupt corporation owned the lease and option, and Snyder and Mason, stockholders in the concern, paid the $800 specified in the contract for the express object of protecting the corporation in its lease and option, the deed made to them inured to the benefit of the corporation. They were members of the corporation managing its affairs, and, if they obtained the benefit of the option from the owner of the land for themselves, they could have obtained it for the corporation. It owned the lease and the option; it had been striving to perform the conditions of the option; and the sale was based upon a lease and option to which Snyder and Mason had no right nor title. When they bought the land they bought for the corporation, no matter in whose name the deed was executed. One of them recognized the trust that was reposed in him, and, when the money that he had paid out was refunded, he conveyed the land to the trustee. The other, however, repudiated the trust and sold to another person. The stockholders under the allegations were acting for the corporation, and they cannot defeat the claims of creditors by claiming property bought for the corporation by having it conveyed to them in their individual capacity.

The land could not have been bought by Snyder and Mason except through the assistance of a contract owned by the corporation, and, when it was bought by means of and under the shadow of that contract by men in control of the corporation, equity, in order to work out right and justice, even though the stockholders did not intend or desire to create a trust relation, will raise a constructive trust in favor of the corporation. The stockholders occupied a fiduciary relation to the corporation, and for them to be permitted to acquire rights that are and ought to be the rightful property of the corporation would be inequitable and unjust. Constructive trusts "arise when the legal title to property is obtained by a person in violation, express or implied, of some duty owed to the one who is equitably entitled, and when the property thus obtained is held in hostility to his beneficial rights." "Persons acting in a fiduciary relation to a corporation will not be permitted to acquire title to the trust property, but equity impresses a constructive trust upon the property purchased or obtained for the benefit of the party beneficially entitled." Pomeroy, Eq. §§ 1051, 1052. The trustee will not be permitted to trade and speculate in the necessities of the person to whom he occupies a fiduciary relation.

There is no merit in the third, fourth, and fifth assignments of error, and they are overruled. There being no statement of facts, the remaining assignments cannot be considered. The corporation having been declared a bankrupt, all of its property passed to the trustee in bankruptcy.

The judgment is affirmed.