**HALL et al. v. HIX.   (No. 11772.)***

Court of Civil Appeals of Texas.   Fort Worth. April 16, 1927.

Rehearing Denied May 21, 1927.

1. **Limitation of actions** ⬥➡148(4)—**Note, agreement, and trust deed, revitalized, as between parties, purchase-money debt barred by limitation (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5693–5695; Rev. St. 1925, art. 5522).**

Note, agreement extending vendor's lien, and trust deed, revitalized between the purchaser and the holder of the original debt, purchase-money debt barred by limitation, under Vernon's Sayles' Ann. Civ. St. 1914, arts. 5693–5695, in absence of fraud or duress, though renewal was not made within 12 months specified in article 5695, since under Rev. St. 1925, art. 5522, renewal may be at any time if not prejudicial to rights of lienholders or purchasers acquired subsequent to bar.

2. **Constitutional law** ⬥➡277(1)—**Right to renew contract to pay purchase-money debt barred by limitations is within due process clauses (Const. U. S. Amend. 14).**

The right to renew a contract to pay a purchase-money debt, where the notes evidencing the debt have become barred by the statutes of limitation, is a right within constitutional guaranties against taking of liberty or property without due process of law (Const. U. S. Amend. 14).

3. **Homestead** ⬥➡96—**Husband's renewal of vendor's lien notes theretofore barred by limitation held not in fraud of wife's homestead rights (Const. art. 16, § 50).**

Free and untainted acts of husband in renewing vendor's lien notes which were barred by limitation and executing extension agreement and trust deed for payment of balance of purchase price *held* not in fraud of wife's homestead rights, since, under Const. art. 16, §. 50, homestead exemption does not arise until payment of purchase money.

On Motion for Rehearing.

4. **Adverse possession** ⬥➡63(5)—**Possession will not ripen into title so as to create homestead exemption enabling wife to set aside husband's renewal of purchase-money notes, unless possession was hostile to vendor (Rev. St. 1925, arts. 5509, 5510, 5515).**

·Possession of land for more than 10 years by husband and wife will not ripen into title by adverse possession so as to create a homestead exemption enabling the wife to set aside husband's subsequent renewal of vendor's lien notes, unless the possession was hostile to the owner of the notes, under Rev. St. 1925, arts. 5509, 5510, relating to limitations, and article 5515, defining adverse possession.

5. **Adverse possession** ⬥➡111—**Statute requiring party relying on limitation to plead it is not limited to defendant, but applies to plaintiff claiming title through limitation (Rev. St. 1925, art. 5540).**

Rev. St. 1925, art. 5540, requiring pleading of limitation by one invoking it as defense, is not limited in application to defendant, but applies also to plaintiff claiming title through operation of limitation statutes.

Appeal from District Court, Johnson County; Irwin T. Ward, Judge.

Suit by Mrs. Eloise Hix against Rosa M. Hall and others. Judgment for plaintiff, and defendants appeal. Reversed and rendered.

E. A. Rice, of Cleburne, for appellants.

J. B. Haynes and F. E. Johnson, both of Cleburne, for appellee.

CONNER, C. J. This suit was filed by appellee, Mrs. Eloise Hix, on January 22, 1926. She alleged that she was the widow of Roscoe Hix, deceased. That her husband died on November 23, 1925. That on November 1, 1895, her husband, Roscoe Hix, purchased from Mrs. Loretta J. McColgan and husband a tract of 34 acres of land, situated about 2¼ miles northeast of Cleburne. That the consideration in said deed was the sum of $100 cash paid by said Roscoe Hix and the further consideration of the execution and delivery by said Roscoe Hix of his four promissory vendor's lien notes of even date of said deed for the principal sum of $200 each, said notes bearing interest from date at the rate of 8 per cent. per annum, the first of said notes being due on November 1, 1896, and one each of said notes maturing on each succeeding November, the last note being due on November 1, 1899.

Appellee further alleged that immediately after the purchase of said land by her husband they moved on the same and continued to occupy it as their homestead up to the time of his death on November 23, 1925. That she and her husband had only one child born to them, and that said child died in December, 1917, never having been married and without issue, and that at the time of the death of said Roscoe Hix, her husband, he left no children or descendants of children, and that he died intestate, and that all title in and interest to said 34 acres of land vested in appellee at the death of her husband.

·Appellee further alleged that on January 16, 1922, her husband, Roscoe Hix, executed a renewal note in the sum of $1,238.62, dated January 16, 1922, payable to the order of appellant Rosa M. Hall, and at the same time the said Roscoe Hix executed a deed of trust on said 34 acres of land securing payment of said renewal note, which renewal note was in

───

⬥➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error refused October 26, 1927.

renewal and extension of the amount due on the last two of the four original vendor's lien notes dated November 1, 1895, and due November 1, 1898 and 1899, respectively. That at the same time the said Roscoe Hix executed an extension agreement to the said Rosa M. Hall purporting to renew and extend the said vendor's lien notes above mentioned, and alleged that said deed of trust and extension agreement were duly recorded in the records of Johnson county. That in said deed of trust O. L. Bishop was appointed trustee, but that prior to December 22, 1925, the said O. L. Bishop had died and appellant M. N. Baldwin had been appointed substitute trustee by appellant Rosa M. Hall, the beneficiary in said deed of trust, and that the said M. N. Baldwin as such substitute trustee had advertised to sell said 34 acres of land under the said deed of trust, default having been made in the payment of said renewal note in the sum of $1,238.62.

Appellee further alleged that at the time of the renewal of the said two vendor's lien notes and the execution of the extension agreement and deed of trust aforesaid, by the said Roscoe Hix, on January 16, 1922, the said two original notes and the lien retained to secure their payment had become barred by the provisions of articles 5693, 5694, and 5695, of the Civil Statutes of Texas, as contained in the Texas Complete Statutes of 1920, and that said renewal note, extension agreement, and deed of trust, not having been executed within one year from and after the 18th day of November, 1913, were void under and by reason of the above-mentioned articles; that the extension agreement was illegal and void and was contrary to the provisions of the articles of the statutes above mentioned.

Appellee further alleged that said land was the community homestead of herself and husband, Roscoe Hix, at the time of the execution of the renewal note for $1,238.62 and of the extension agreement, and that the right to renew said indebtedness had been extinguished by the statutes of this state and especially article 5695, and that such attempted renewal was void. It was further alleged that the renewal note and the extension agreement and deed of trust lien executed by Roscoe Hix on January 16, 1922, were not only void, but each and all of them created and cast a cloud upon her alleged title to said 34 acres of land such as to hinder and prevent the sale of said land by her, and she prayed that an injunction be issued restraining the said M. N. Baldwin, substitute trustee, from further advertisement and sale of the land, and that she have judgment declaring said renewal note, deed of trust lien, and extension agreement of no effect and void, and for cancellation of the same and for general and special relief.

The petition having been presented to the judge in chambers on January 22, 1926, an order was made granting temporary injunction. On March 6, 1926, the defendants Mrs. Rosa M. Hall, joined by her husband, W. C. Hall, and M. N. Baldwin, substitute trustee, filed their original answer and cross-action in said cause. The defendants excepted to the plea of limitation set out by appellee and to the plea of homestead as a bar to the validity of the liens of the defendant Rosa M. Hall against said land, and further pleaded that plaintiff, Eloise Hix, was estopped to deny the validity of the renewal of the said liens and notes made by her husband on January 16, 1922, and prayed judgment on their said exceptions and pleas.

By way of further answer and cross-action, the defendants set forth the facts relating to the sale of the land, the execution of the original notes, the renewal thereof, and the execution of the trust deed to secure the renewal, substantially as set forth in the plaintiffs' petition, and further alleged that the original notes of $200 each, given for the land referred to, were payable to Loretta J. McColgan, as alleged by the plaintiff; that the defendant Rosa M. Hall was a daughter of said Loretta J. McColgan and H. T. McColgan, and that long prior to January, 1922, the said Rosa M. Hall became and was the legal owner and holder of the last two of said series of four notes, together with all the liens, rights, equities, titles, and interest in said lands securing said notes. That the said renewal note of January 16, 1922, executed by Roscoe Hix in the sum of $1,238.62, was payable to the order of Rosa M. Hall, and due on or before one year after date, and was secured by a deed of trust of date January 16, 1922, duly executed and acknowledged by said Roscoe Hix covering and conveying the said 34 acres of land, and which deed of trust had been filed for record on January 17, 1922, and duly recorded in the deed records of Johnson county. That on the same date, to wit, January 16, 1922, and contemporaneously with the execution of said renewal note and deed of trust, the said Roscoe Hix executed a written extension agreement duly signed and acknowledged by the said Rosa M. Hall, by which extension agreement Roscoe Hix renewed and extended the vendor's lien on said 34 acres of land to secure payment of said renewal note for $1,238.62, which extension agreement was duly filed for record on January 17, 1922, and recorded in the deed records of Johnson county.

The defendant Rosa M. Hall further alleged that Roscoe Hix died intestate and without heirs other than the plaintiff, Mrs. Eloise Hix, substantially as set forth in plaintiff's petition, and alleged that the land was charged with the payment and satisfaction of said vendor's lien renewal note and liens securing the same; that said note was past due and unpaid and prayed for a judgment for the amount due with a foreclosure of a

vendor's lien and deed of trust lien and for general relief.

Other pleadings were filed by the parties, but we think it sufficient to say that the foregoing substantially outlines the allegations of the parties except that it should be further stated that plaintiff in reply to the cross-action of the defendants specially alleged that the renewal note, extension agreement and deed of trust lien had all been executed "without the knowledge or consent of the plaintiff, were in fraud of the rights of this plaintiff," and prayed as in her original petition.

The cause came on for trial on the 6th day of May, 1926, and was heard by the court without the intervention of a jury. The court overruled the defendant's exceptions and demurrers, and at the conclusion of the evidence rendered judgment that plaintiff, Eloise Hix, recover on her plea for cancellation of the note and deed of trust liens and extension agreement, and that the defendant Rosa M. Hall take nothing by her suit and cross-action or upon said lien and extension note, and further rendered judgment perpetuating the temporary injunction that had been issued upon the prayer of plaintiff's original petition enjoining the defendants from in any manner attempting to enforce said note or liens. From the judgment so rendered the defendants have appealed to this court.

The evidence fully supports the material allegations of fact stated in appellants' answer and cross-action, and they contend that Roscoe Hix, having purchased the land in controversy on November 1, 1895, and having given his vendor's lien notes in payment therefor, with lien reserved in deed, and having on January 16, 1922, executed his renewal note, and also his vendor's lien extension agreement duly signed and acknowledged by him in the manner provided by law, and having at the same time executed his deed of trust lien duly signed and acknowledged by him in the manner provided by law, and having at the same time executed his deed of trust lien duly signed, acknowledged, and recorded, and the renewal note, extension agreement, and deed of trust lien not being barred at the time this suit was filed thereon, such note, extension agreement, and deed of trust lien were and are effective to revive said original debt and vendor's lien regardless of the provisions of articles 5693, 5694, and 5695 of Vernon's Sayles' Statutes of 1914, since there were no intervening equities, or subsequent purchasers, or lienholders, and the trial court erred in not so holding and in canceling and decreeing as void the said liens of the appellant Rosa M. Hall.

Appellee's counter proposition is to the effect that the original vendor's lien notes, executed by Roscoe Hix, having been executed prior to July 14, 1905, to wit, on November 1, 1895, and being more than four years past due at the time of the taking effect of said article 5695, and not having been extended nor suit brought thereon within one year from the taking effect of said article 5695, which took effect on the 18th day of November, 1913, said renewal note, extension agreement, and deed of trust, executed on January 16, 1922, were ineffectual to revive said lien and debt against the whole or any part of said land, and was void as such attempted renewal and revival, and would have been void as such attempted renewal and revival, even if the wife of Roscoe Hix, the appellee herein, had joined in the execution of said instruments, but she not having joined in said execution of said instruments, the execution of the same by her husband was a fraud upon the rights of appellee in said land, and was a fraud upon her homestead right therein, and did not and could not renew the debt and lien against either the community interest of the said Roscoe Hix in said land or against the entire tract of land, and the court did not err in refusing to foreclose appellants' note and lien on said land.

[1] It is thus seen that there is little or no dispute in the facts in this case, and that its determination rests upon the proper construction of the articles of the statutes referred to in the contention of appellants and in the counter contention of appellee. The articles of the statutes referred to, in so far as necessary to notice, provide that (article 5693) no power of sale conferred by any deed of trust or any mortgage on real estate theretofore executed, or that might thereafter be executed, shall be in force after the expiration of the four years from the maturity of the indebtedness secured thereby, and any sale under such power after the expiration of such debt shall be void, and such sale may be enjoined and the lien created thereby shall cease to exist four years after the maturity of the debt secured thereby.

Article 5694 provides that the right to convey any real estate by virtue of a superior title retained in any deed of conveyance theretofore or thereafter executed, or in any vendor's lien note or notes theretofore or thereafter executed, given for the purchase money of such real estate, shall be barred after the expiration of four years from the maturity of such indebtedness, and that if suit be not brought for recovery of such real estate, or for the foreclosure of the lien to secure such note or notes within four years from the date of the maturity of such indebtedness, or if suit is not brought within such time for the recovery of the land by the original vendor, or his transferee, or for the foreclosure of the lien given to secure such notes, the purchase money therefor shall be conclusively presumed to have been paid in any suit to recover such land or to enforce a lien thereon, and the lien reserved in any such notes and deeds conveying the land shall cease to exist four years after the note or

notes have matured, provided the lien reserved in such note or notes may be extended as provided in section 5695 of the chapter.

Article 5695 provides that when the date of maturity of either debt referred to in either of the foregoing articles is extended, if the contract of extension is signed and acknowledged as provided for in the law relating to the execution of deeds of conveyance by the party or parties obligated to pay such indebtedness as extended and filed for record in the county clerk's office in the county in which the land is situated, the lien shall continue and be in force until four years after maturity of the notes as provided in such extension, the same as in the original contract, and the lien shall so continue for any succeeding or additional extension so made and recorded, provided that the owners of all notes secured by deeds of trust or other liens and the owners of all vendor's lien notes reserved in deeds of conveyance which were executed prior to July 14, 1905, and which are more than four years past due at the time this act takes effect as shown by the original mortgage, deed of trust, or conveyance, or last record extension, shall have twelve months after the act takes effect within which they may obtain such record extension as hereinbefore provided for, or bring suit to enforce the liens securing them if same are valid obligations when this act takes effect, and if such debt is not so extended of record, or suit is not brought within such time, the right to extend such debt of record or bring suit to enforce such liens shall be forever barred.

Article 5522 of the Statutes of 1925 provides that if the contract of extension is signed and acknowledged as provided for in the law relating to the execution of deeds of conveyance by the party or parties obligated to pay such indebtedness as extended and filed for record in the county clerk's office in the county in which the land is situated, the lien shall continue and be in force until four years after maturity of the notes as provided in such extension, the same as in the original contract and lien shall so continue for any succeeding or additional extension so made and recorded, provided the owner of the land and holder of the note or notes may at any time enter into a valid agreement renewing and extending the debt and lien, so long as it does not prejudice the rights of lienholders or purchasers subsequent to the date such liens became barred of record under laws existing prior to the taking effect of or under this act; as to all such lienholders or purchasers any renewal or extension executed or filed for record after the note or notes and lien or liens were, or are, barred of record and before the filing for record of such renewal or extension, such renewal or extension shall be void.

An interesting history of the several articles of the statutes referred to and of amendments relating thereto, which need not, be here repeated, may be found in the opinion of Chief Justice Cureton in the case of Cathey v. Weaver, 111 Tex. 515, 242 S. W. 447.

The concluding proviso in article 5522 of the codified laws of 1925 indicates that articles 5693, 5694, and 5695 of Vernon's Sayles' Statutes, above referred to, were intended for the protection of subsequent purchasers and lienholders. To repeat, the language of the proviso referred to is to the effect that the holder of the note or notes may at any time enter into a valid agreement renewing and extending the debt and lien, so long as it does not prejudice the rights of lienholders or purchasers subsequent to the date such liens became barred of record under laws existing prior to the taking effect of the act. And such construction was applied in the case of Amonette v. Taylor (Tex. Civ. App.) 244 S. W. 238. From the opinion in that case, written by Chief Justice Pleasants, we quote the following:

"The majority of this court cannot agree with the appellants in the contention that article 5695 of the statute is applicable to renewals of liens as between the parties. There is nothing in the caption of the original act, nor in its language as now embraced in the cited articles of the statute, which would require the construction that it was the intention of the Legislature in the enactment of the law to declare void as between the parties any renewal of a lien on land which is not recorded in accordance with the provisions of the act. No public benefit could be subserved by such a law. If parties can create a valid lien on land without putting it of record, no possible reason suggests itself to our minds for denying them the right to extend or renew a lien in the same way. We think the obvious purpose and intent of the statute was to protect subsequent purchasers of the land from unrecorded renewals or extension of liens, and not to unnecessarily hinder parties in their right to make contracts."

The above quotation was quoted with express approval in the opinion of Powell, presiding judge of section B of our Commission of Appeals, in the case of Watson v. First Nat. Bank of Coleman, 285 S. W. 1050, in which Judge Powell further noted that:

"The codifiers in 1925 gave statutory effect to the right of the parties themselves to renew a debt or lien, already barred. The courts had always done so."

The opinion of Judge Powell in the case of Watson v. Bank reviews a number of decisions cited in behalf of appellee in the present case, and, as it seems to us, is conclusive in the present proceeding. As said in 12 Corpus Juris, p. 949, § 460:

"All persons who are sui juris (subject to exceptions not applicable in the present case) are free to make whatever contracts they please as long as no fraud or deception is practiced and the contracts are legal in all respects."

[2] The text is supported by citation of numerous authorities, and we think is in harmony with constitutional provisions, for, as said by the same authority—12 C. J. 1200, § 966:

"The right to make contracts is both a liberty and a property right, and is within the protection of the guaranties against the taking of liberty or property without due process of law. Neither the state nor federal governments therefore may impose any arbitrary or unreasonable restraint on the freedom of contract."

In the case before us there is no evidence that even tends to show any fraud or duress on the part of either Roscoe Hix, appellee's husband, or appellant Rosa M. Hall in the execution of the renewal note and extension agreement executed by those parties. The attorneys who prepared and supervised the execution of those instruments testified that the appellee, Eloise Hix, was present during the discussion which led up to the execution of these instruments, and that, while she did not join in the execution, she made no protest against it. Appellee did not deny her presence at the time of the execution of the instruments and during the discussions thereof, but merely testified that she thought they related to a mortgage or other instrument of the kind. While at the time of the execution of these instruments the original notes and liens were barred, as asserted by appellee, yet the purchase-money debt for the land now claimed by appellee still existed as a moral obligation, which affords a sufficient consideration for the act of Roscoe Hix in executing the instruments. It is true that he might have refused to execute them, but he had the power to waive the statute of limitation—that being a personal privilege. See 29 Cyc. 1107, and numerous other authorities that might be cited.

[3] Nor do we think that it can be said that the free and untainted acts on the part of Roscoe Hix in renewing the vendor's lien notes and in executing the extension agreements and trust deed were in fraud of the homestead right of appellee. In the case of Jackson v. Bradshaw, 24 Tex. Civ. App. 30, 57 S. W. 878, writ refused, it was said, quoting from the headnotes:

"A purchaser of land may waive the plea of limitations as to the original purchase-money note by renewing the same." And "in the absence of fraud on the rights of his wife, a purchaser of land may renew the original purchase-money note after it is barred by limitations, and thereby bar the wife's rights in the premises, though the land is his homestead."

For the reasons stated and upon the authority of the case of Watson v. Bank, 285 S. W. 1050, which was approved by the Supreme Court, we conclude that the judgment below should be reversed and here rendered in favor of appellants, dissolving the writ of injunction, and for the recovery of principal, interest, and attorney's fees provided for in the renewal note and the establishment and foreclosure of the vendor's and trust deed liens upon the land in controversy to secure the payment of said note, interest, attorney's fees, and costs, and the judgment will be accordingly so entered.

## On Motion for Rehearing.

Appellee presents a forceful motion and argument for rehearing. Our conclusion as to the legal effect of the extension of the notes in question must be upheld, we think, in obedience to the statutes and authorities cited in our original opinion. Nor do we feel able to concur in the view that the extension of the notes in controversy operated as a legal fraud on the homestead right of the wife. In addition to the cited case of Jackson v. Bradshaw, 24 Tex. Civ. App. 30, 57 S. W. 878, relating to this subject, we venture to call attention to the fact that, generally speaking, the husband is given by our laws the management, control, and power of disposition of all community property, and that the homestead exemption does not arise until after the payment of the purchase money. So far as pertinent, section 50 of article 16 of the Constitution provides that:

"The homestead of a family shall be, and is hereby protected from forced sale, for the payment of all debts except for the purchase money thereof, or a part of such purchase money," etc.

It thus appears that there is no foundation for a claim of the homestead exemption in cases where "the purchase money thereof or a part of such purchase money" has not been paid, as has been frequently so decided. Clements v. Lacy, 51 Tex. 150; De Bruhl v. Maas, 54 Tex. 464; Roy v. Clarke, 75 Tex. 28, 12 S. W. 845. It may be said that in the cases cited it does not appear that the purchase-money notes were barred by limitation, but we think this distinction is immaterial under the facts of this case, for while the original purchase-money notes were barred by limitation, the debt evidenced thereby still existed, and the evidences thereof subject to effective restoration by the express terms of articles 5694 and 5695, V. S. Statutes. This when done, under the circumstances of this case, revitalized the debt, regardless of the fact so strongly urged that the renewal in the present case was not made within the twelve months specified in article 5695. This must be true, we think, under the terms of article 5522, Rev. Statutes of 1925, stating that the renewal may be made at "any time so long as it does not prejudice the rights of lienholders or purchasers subsequent to the date such lien became barred," etc. We can but think that the construction

suggested is clearly supported in the cases of Amonette v. Taylor (Tex. Civ. App.) 244 S. W. 238, and Watson v. Bank (Tex. Com. App.) 285 S. W. 1050, both cited in our original opinion, as well as by the constitutional principles relating to the freedom of contract. If so, there is no other theory presented in the pleadings or in the evidence upon which appellee's recovery can be properly based, for the renewal note was certainly not barred by the four years' statute of limitation pleaded as against the original purchase-money notes, and a careful reading of appellee's pleading, which we have again reviewed, discloses that neither the five nor ten years' statute of limitation, under and by virtue of which title might be acquired, has been pleaded.

[4] While the allegations and evidence show that the land in controversy was occupied by appellee and her deceased husband ten years or more after the bar of the original purchase-money notes and before the execution of the renewal note, yet a necessary element of recovery under the statutes of limitation must be "adverse possession." See articles 5509 and 5510, Rev. Statutes of 1925, and article 5515 of the statutes provides that:

" 'Adverse possession' is an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another."

[5] Neither the appellee's pleadings nor the evidence discloses that during the limitation period the possession of herself and husband was hostile to the claim of appellant or of her assignor. For aught that appears in either pleading or proof, the delay in presenting the claim for the original purchase money was a matter of grace, by virtue of which appellee and her husband were enabled to occupy the land rent free and without payment of either the principal or interest for many years. However, regardless of this suggestion, as already noted, appellee did not plead either the five or ten years' statute of limitation, and the statute (article 5540, Rev. Statutes of 1925) declares that:

"The law of limitation shall not be available in any suit unless it be specifically set forth by the party who in his answer invokes it as a defense."

This article of the statute is not limited in its application to a defendant, but applies as well to a plaintiff claiming title through the operation of the statutes of limitation. Erp v. Tillman, 103 Tex. 574, 131 S. W. 1057; Mayers v. Paxton, 78 Tex. 196, 14 S. W. 568; Molino v. Benavides, 94 Tex. 415, 60 S. W. 875.

Without further discussion, we think the motion for rehearing must be overruled, and it is so ordered.